UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LEANNE DARLENE GREGG,          )
                               ) No. CV-08-0336-CI
          Plaintiff,           )
                               ) ORDER DENYING PLAINTIFF'S
v.                             ) MOTION FOR SUMMARY JUDGMENT
                               ) AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE,             ) MOTION FOR SUMMARY JUDGMENT
Commissioner of Social         )
Security,                      )
                               )
          Defendant.           )
                               )

     BEFORE THE COURT are cross-Motions for Summary Judgment.  (Ct.
Rec. 13, 21.)  Attorney Rebecca Coufal represents Plaintiff; Special
Assistant United States Attorney Franco Becia represents Defendant.
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 7.)   After reviewing the administrative record and the
briefs filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment and directs entry of judgment for Defendant.

     Plaintiff applied for Supplemental Security Income (SSI) on
April 22, 2005. (Tr. 88.)  She alleges disability due to depression,
personality disorder, sleep disorder and anxiety, with an onset date
of April 1, 2005. (Tr. 88,98-99.)  Following a denial of benefits at
the initial stage and on reconsideration, a hearing was held before
Administrative Law Judge (ALJ) Paul Gaughen on December 6, 2007.

1  (Tr. 527-64.)  Plaintiff, who was represented by counsel, medical

2  expert Allen Bostwick, Ph.D., and Debra LaPoint (VE) testified.    On

3  February 8, 2008, ALJ Gaughen denied benefits; review was denied by

4  the Appeals Council.    (Tr. 2-6, 20-27.)    This appeal followed.

5  Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

6                          **STANDARD OF REVIEW**

7      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

8  court set out the standard of review:

9        The decision of the Commissioner may be reversed only if
         it is not supported by substantial evidence or if it is
10        based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
         1097 (9th Cir. 1999). Substantial evidence is defined as
11        being more than a mere scintilla, but less than a
         preponderance. *Id.* at 1098. Put another way, substantial
12        evidence is such relevant evidence as a reasonable mind
         might accept as adequate to support a conclusion.
13        *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
         evidence is susceptible to more than one rational
14        interpretation, the court may not substitute its judgment
         for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
15        *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595,
         599 (9th Cir. 1999).

16
         The ALJ is responsible for determining credibility,
17        resolving conflicts in medical testimony, and resolving
         ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
18        Cir. 1995).  The ALJ's determinations of law are reviewed
         *de novo*, although deference is owed to a reasonable
19        construction of the applicable statutes. *McNatt v. Apfel*,
         201 F.3d 1084, 1087 (9th Cir. 2000).

20

21                          **SEQUENTIAL PROCESS**

22      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

23  requirements necessary to establish disability:

24        Under the Social Security Act, individuals who are
         "under a disability" are eligible to receive benefits. 42
25        U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
         medically determinable physical or mental impairment"
26        which prevents one from engaging "in any substantial
         gainful activity" and is expected to result in death or
27        last "for a continuous period of not less than 12 months."
         42 U.S.C. § 423(d)(1)(A). Such an impairment must result

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 50 years old at the time of the administrative hearing. (Tr. 551.) She attended school to the eighth grade, and completed her high school equivalency degree. She went to community college and received an accounting degree in 1998. (Tr. 550-51.) At the time of the hearing, she was unmarried and had four grown children. (Tr. 135.) She testified she lived in an apartment and spent most of her day there watching television, having coffee with a friend, or going to her mental health treatment. (Tr. 552-53.) She testified she was attending group and individual counseling two times a week for depression and anxiety. (Tr. 553.) She reported she has problems focusing and with anxiety attacks. (Tr. 552-53.)

**ADMINISTRATIVE DECISION**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, he found she had severe impairments of bipolar disorder and personality disorder, but these impairments did not meet or equal one of the listed impairments in the Regulations. (Tr. 22-23.) The ALJ found Plaintiff's statements regarding her symptoms and limitations were not credible. (Tr. 26.) At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC) and determined she could do work at all exertional levels, but would need to have limited contact others in her workday to limit interference with her ability to concentrate. (Tr. 24.) He found with this RFC, Plaintiff could perform her past work as an

1 accounting clerk, and was therefore not "disabled" as defined by the

2 Social Security Act through the date of the decision.  (Tr. 27.)

3                                    **ISSUES**

4      The question presented is whether there was substantial

5 evidence to support the ALJ's decision denying benefits and, if so,

6 whether that decision was based on proper legal standards.

7 Plaintiff contends the ALJ erred when he (1) improperly rejected

8 examining medical source opinions; (2) improperly relied on medical

9 expert testimony; (3) presented an incomplete hypothetical to the

10 vocational expert; and (4) improperly assessed her credibility.

11 (Ct. Rec. 14.)

12                                  **DISCUSSION**

13 **A.  Credibility**

14      It is well-settled that an ALJ cannot be required to believe

15 every allegation of disabling pain, even when medical evidence

16 exists that a claimant's condition may produce pain. *Fair v. Bowen*,

17 885 F.2d 597, 603(9th Cir. 1989).  "Many medical conditions produce

18 pain not severe enough to preclude gainful employment."  *Id*.

19 However, where a claimant's statements as to the severity of

20 impairments, pain and limitations are found not credible, the

21 adjudicator must make a credibility determination with findings

22 sufficiently specific to permit the court to conclude the ALJ did

23 not arbitrarily discredit claimant's allegations. *Thomas v.*

24 *Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*,

25 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  Although an ALJ may

26 not reject a claimant's extreme symptom complaints solely on a lack

27 of objective medical evidence, medical evidence is a relevant factor

28

1   to consider.   *Social Security Ruling* (*SSR*) 96-7p.[1]

2       If there is no affirmative evidence that the claimant is
3   malingering, the ALJ must provide "clear and convincing" reasons for
4   rejecting the claimant's allegations regarding the severity of
5   symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The
6   ALJ engages in a two-step analysis in deciding whether to admit a
7   claimant's subjective symptom testimony. *Lingenfelter v. Astrue*,
8   504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d
9   1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find
10  the claimant has produced objective medical evidence of an
11  underlying "impairment," and that the impairment, or combination of
12  impairments, could reasonably be expected to cause "some degree of
13  the symptom." *Lingenfelter*, 504 F.3d at 1036. Once the first test
14  is met, the ALJ must evaluate the credibility of the claimant and
15  make specific findings supported by "clear and convincing" reasons.
16  *Id.* In addition to ordinary techniques of credibility evaluation,
17  the ALJ may consider the following factors when weighing the
18  claimant's credibility: the claimant's reputation for truthfulness;
19  inconsistencies either in her allegations of limitations or between
20  her statements and conduct; daily activities and work record; and
21  observations in the record from physicians and third parties
22  concerning the nature, severity, and effect of the alleged symptoms.

23

24       [1] Social Security Rulings are issued to clarify the
     Commissioner's regulations and policy. They are not published in
25   the federal register and do not have the force of law. However,
26   deference is to be given to the Commissioner's interpretation of its
27
     regulations. *Bunnell*, 947 F.2d at 342 n.3.
28

1  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*,

2  885 F.2d at 597 n.5.

3  As explained in the Commissioner's policy ruling, the ALJ need

4  not totally reject a claimant's statements; he may find the

5  claimant's statements about the intensity of symptoms to be credible

6  to a certain degree, but discount statements based on his

7  interpretation of evidence in the record as a whole.  *SSR 96-7p.*

8  "For example, an adjudicator may find credible an individual's

9  statement as to the extent of the functional limitations or

10 restrictions due to symptoms; *i.e.*, that the individual's abilities

11 to lift and carry are compromised, but not to the degree alleged."

12 *Id*.  If the ALJ's credibility findings are supported by substantial

13 evidence in the record, "the court may not engage in

14 second-guessing." *Thomas,* 278 F.3d at 959; *Fair*, 885 F.2d at 604

15 ("credibility determinations are the province of the ALJ").

16 Here, there is no evidence of malingering.  The ALJ

17 specifically referenced Plaintiff's statements that she could not

18 work anymore because her mental illness had worsened; she got

19 nervous around people; she could not remember her computer skills;

20 she did not drive because she thought her medications made it

21 unsafe; she was unable to focus; and she had experienced a panic

22 attack at the grocery store.  (Tr. 25.)  The ALJ found Plaintiff's

23 impairments could reasonably be expected to cause these symptoms,

24 and he properly gave several specific reasons for rejecting the

25 degree of severity alleged.  (*Id.*)

26 First, he found there were inconsistences between Plaintiff's

27 statements and the medical evidence.  (*Id.*)  This is an appropriate

28

reason to discount credibility as long as it is not the only reason. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *SSR* 96-7p. Significantly, the record includes persuasive objective psychological testing results from Frank Rosekrans, Ph.D., and associates[2] and Janet Everhart, Ph.D., indicating normal intelligence, normal attention, concentration and memory, and minimal to no depressive symptoms. (Tr. 137-39, 171-76, 292-94.) Other reasons for discounting Plaintiff's credibility given by the ALJ were: her poor work history; her self-report to examining psychologist, Joyce Everhart, Ph.D., of minimal depression and the ability to perform her activities of daily living, including shopping and laundry; and evidence that her symptoms were well-controlled by her medication. (Tr. 25-26.) These are legally sufficient reasons supported by the record. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

For example, reports from Terry Patterson, ARNP, Plaintiff's medication management provider at Spokane Mental Health in 2006 and 2007, and medical expert Alan Bostwick, Ph.D.'s, review of the

---

[2] The record includes two consultative evaluations from Psychological Services Spokane, wherein Dr. Frank Rosekrans reviewed and adopted findings by his associates, mental health professionals Shannon Schoonover, M.S., (February 2005) and Shari Lyszkiewicz, M.S., LMHC, (in January 2007). (Tr. 170-77; 294-08.) The opinions and observations in these reports will be referenced as those of Dr. Rosekrans in this decision. *See Gomez v. Chater,* 74 F.3d 967, 970-71 (9th Cir. 1996).

evidence at the hearing, indicate Plaintiff's depression symptoms were well-controlled with medication with episodes of situational depression and anxiety, and Plaintiff reported no side-effects from the medication. (Tr. 301-02, 307-10, 534.) Treatment notes from clinician David O'Shea, M.S.W., in September 2007, indicate Plaintiff was actively participating in group treatment, was cheerful at times, readily engaged with others in the group and reported no significant changes in her routine or symptoms. (Tr. 434-44.) No severe symptoms were observed by the Mr. O'Shea.

As noted by the ALJ, Plaintiff's mental health counselors observed Plaintiff's issues focused around problems in her personal relationships. (Tr. 25.) While relationship dysfunction is an expected byproduct of borderline personality syndrome, as explained by Dr. Bostwick and Dr. Rosekrans, the diagnosis does not necessarily mean a person is disabled or cannot work. (Tr. 294, 535.) Indeed, progress notes from Mr. O'Shea and Mitch Osborne, her counselors at Family Services Spokane, document sessions dealing with housing issues and family issues, *i.e.*, her sister's death, her brother-in-law's problems, the custody of her sister's grandchildren, the break-up with her boyfriend and her relocation to new housing. (Tr. 369, 384-86, 399-401, 406-10, 415, 434, 440, 446, 450-54.) However, as noted by Dr. Bostwick, Nurse Practitioner Patterson and the examining psychologists, counseling and medication were effective in controlling Plaintiff's extreme symptoms, and objective psychological testing showed Plaintiff's intelligence, depression and ability to perform daily activities were well within normal limits. (Tr. 292-94, 301, 542-43.) The ALJ reasonably

interpreted the record in its entirety and gave specific "clear and convincing" reasons for discounting Plaintiff's subjective symptom allegations.  The ALJ did not err in his credibility determination.

**B.   Evaluation of Medical Evidence**

Plaintiff argues the ALJ erred in his evaluation of the medical evidence because, (1) he did not give proper weight to the medical opinions of Dr. Rosekrans; (2) he improperly rejected "marked" limitations in her mental RFC assessed by mental health counselor, David O'Shea; and (3) the opinions of Dr. Rosekrans and Mr. O'Shea should have been given more weight than the opinions of non-examining medical expert, Alan Bostwick. (Ct. Rec. 14 at 14-15.)

In determining disability, the ALJ must evaluate the medical evidence submitted and explain the weight given to the opinions of accepted medical sources[3] in the record.  The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.  20 C.F.R. § 416.927.  A treating psychologist's opinion carries more weight than an examining psychologist's, and an examining psychologist's opinion carries more weight than a non-examining reviewing or consulting psychologist's opinion.  *See Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "As is

_____

[3] Acceptable medical sources for purposes of disability proceedings include licensed or certified psychologists.  20 C.F.R. §§ 404.1513, 416.913.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted).  If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews,* 53 F.3d at 1043.

Historically, the courts have recognized conflicting medical evidence, incongruity between the doctor's opinions and his own treatment notes and objective data, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.  If substantial evidence in the record reasonably supports the ALJ's findings, his findings will not be disturbed.  *Sprague*, 812 F.2d at 1229-30.

**1.  Examining Medical Source Opinions**

Plaintiff argues there is not substantial evidence to support the ALJ's finding that Dr. Everhart's opinions (included in her April 6, 2006, evaluation) warranted more weight than the opinions of Dr. Rosekrans, who examined Plaintiff in February 2005, and January 2007. (Tr. 170, 291).

It is the responsibility of the ALJ to resolve conflicts in the medical evidence, based on his interpretation of the entire record.

*Andrews*, 53 F.3d at 1039.  The record shows Dr. Everhart reviewed and summarized treatment records from October 2004 to December 2005, as well Dr. Rosekrans' 2005 report. (Tr. 135.) In addition, she interviewed Plaintiff, conducted a mental status examination and administered a battery of psychological tests: the Hamilton Rating Scale for depression (indicating mild or no depression); the Burns Anxiety Inventory (a self report), and Trails A and B.  The results of these objective tests were substantially consistent with the 2005 and 2007 testing by Dr. Rosekrans and contrary to Plaintiff's allegations of severe memory problems and depression. (Tr. 135-38, 291-292.)  Further, Dr. Everhart does not contradict Dr. Rosekrans' intelligence and memory testing results.  (Tr. 135.)

Dr. Everhart concluded, based on test results and her interview, that Plaintiff's pace seemed good (Plaintiff reported never being told she was slow at her work) and persistence seemed adequate; she tested within normal limits and appeared stable in psychological functioning; she would have problems with persistence and working with the general public in times of "extreme emotional stress;" she reported no work behavior; and she would work best in an environment that "did not require close interaction with other people." (Tr. 136, 139.)

In his decision, the ALJ gave weight to Dr. Everhart's opinions and limited weight to the Rosekrans opinions that Plaintiff had marked limitations in her ability to relate to co-workers and supervisors, and would have difficulty obtaining and maintaining employment.  (Tr. 297.)  The ALJ reasoned that Dr. Rosekrans' conclusions were not supported by results of the extensive

standardized testing administered by Dr. Rosekrans, which showed only mild limitations (Tr. 175, 292), and his opinions were not consistent with Dr. Everhart's detailed report. (Tr. 26.) These are specific and legitimate reasons to discount contradicted opinions of an examining psychologist. Further, they are supported by substantial evidence.

The evidence shows that Dr. Everhart specifically referenced Dr. Rosekrans' 2005, testing results[4] and diagnoses in her report, (Tr. 135), and assessed a diagnosis of "bipolar II disorder, depressed type with some anxiety currently controlled with medication." (Tr.138.) These diagnoses, which were adopted by the ALJ, are supported by substantial evidence in the record.[5]    For

---

[4] Dr. Rosekrans administered the following tests in 2005: Mini Mental status exam; Trails A and B; Wechsler Adult Intelligence Scale; Weschler Memory Scale; and Minnesota Multiphasic Personality Inventory-2nd edition (MMPI-2). (Tr. 170-171.) The following tests were administered in 2007: Mini Mental Status Exam; Trails A and B; MMPI-2 and TOMM (memory and malingering). (Tr. 291.) However, it appears that the evaluators in Dr. Rosekrans' assessment did not review treatment notes from Spokane Mental Health or Family Services. (Tr. 170-77, 291.)

[5] Plaintiff assumes the ALJ relied on the medical expert's opinion that she had "major depressive disorder" and "borderline personality disorder." She argues the ALJ erroneously mis-characterized Dr. Bostwick's testimony when he found she had the severe impairments of "bipolar disorder II" in his step two findings. (Ct. Rec. 14 at 16-17.) However, it appears the ALJ's

example, treatment notes from Spokane Mental Health show that Plaintiff was routinely seen by mental health providers to manage her medications. (Tr. 154-64, 301-10.)   Nurse practitioners Terry Patterson and Barbara Crosby reported Plaintiff's symptoms were well-controlled with medications.   Plaintiff was diligent in her medication management appointments and sought medication adjustments appropriately.  (*Id.*)

Plaintiff also reported to both examining psychologists that she could perform her daily activities, including driving, shopping and cooking. (Tr. 138, 292-93.)  She stated she did well in school, but had forgotten how to work the computer.   In 2005, Plaintiff reported having custody of her sister's three grandchildren (Tr. 161); in 2006, she told Dr. Everhart she no longer had custody, and was living in an apartment with her brother-in-law. (Tr. 138-39, 161.)  She also told Dr. Everhart she did not have trouble getting

_____

step two findings are based on the opinions of Dr. Everhart, who reasonably factored in "the amount of medication [Plaintiff] needed to maintain stability," in her diagnosis of "bipolar II disorder, depressed type with some anxiety." (Tr. 22, 138.)  Also, it is noted on independent review Dr. Bostwick testified that Plaintiff had diagnoses under 12.04 and 12.08 of the Listings.  (Tr. 532.) Both "depressive syndrome" and "bipolar syndrome" (with manic and depressive syndrome components) are within the affective disorder listing.  20 C.F.R. Pt. 404, Supt. P, App.1, § 12.04 A.1. and 3. The ALJ reasonably resolved the conflict in between the two diagnoses by relying on the examining psychologist opinion that differed somewhat from the non-examining psychologist's opinion.

along with people, although she had bad days when she "isolated." (Tr. 136-37.)   This is consistent with mental health treatment records that noted her ongoing and consistent efforts to resolve grief and relationship issues, as well as active and appropriate participation in group therapy.  (Tr. 434-44.)  Plaintiff's self-report and test results do not support Dr. Rosekrans' assessment of "marked" limits in her ability to get along with co-workers.  (Tr. 297.)

The ALJ reasonably interpreted the evidence to conclude Plaintiff could perform work that does not require more than limited contact with others at the workplace.   His reasons for giving little weight to the Rosekrans conclusory and unexplained opinion that Plaintiff would have "difficulty" securing and maintaining employment are supported by substantial evidence and without legal error.

**2.   Non-examining Medical Expert Opinion**

At the hearing, medical expert Dr. Bostwick reviewed the medical evidence and concluded that Plaintiff's mental conditions caused mild impairment of activities of daily living, no more than moderate limitations in Plaintiff's social functioning, moderate limitation in concentration, persistence and pace, and no episodes of decompensation.  (Tr. 537.)  Plaintiff argues the ALJ erroneously relied on a non-examining medical source opinion.  (Ct. Rec. 14 at 17.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1043; *Lester*,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

81 F.3d at 830-31.  The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Lester*, 81 F.3d at 831 (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  Cases have upheld rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor; but those cases have also found reasons to reject the opinions of examining and treating physicians that were independent of the nonexamining doctor's opinion.  *Lester*, 81 F.3d at 831 (*citing Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five nonexamining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the non-examining medical source, but also substantial evidence independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

As discussed above, the ALJ did not rely exclusively on Dr. Bostwick's testimony.  Further, the ALJ's findings are supported by the evaluation and opinions of examining psychologist Dr. Everhart, standardized testing from Dr. Rosekrans, and treatment notes from Spokane Mental Health and Family Service Spokane, all of which were

reviewed and discussed by Dr. Bostwick.  Dr. Bostwick's detailed and reasoned testimony was properly considered by the ALJ, and those portions of his testimony adopted by the ALJ are likewise supported by the medical record as a whole.  The ALJ did not rely erroneously on the medical expert testimony.

### 3.  Other Source Opinions

Plaintiff contends the limitations assessed by Mr. O'Shea, her mental health counselor, should have been given more weight than a non-examining medical source.   (Ct. Rec. 14 at 17.)  She argues the ALJ's reasons for rejecting Mr. O'Shea's opinions were not legally sufficient.  *Id.*

The opinions of mental health therapists such as Mr. O'Shea are considered "other source" opinions under the Regulations.  20 C.F.R. § 416.913(d).   Although other sources cannot establish a diagnoses or disability, their opinions regarding how an impairment affects an individual's ability to do work activities must be considered by the ALJ.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Sprague*, 812 F.2d at 1232.  If the ALJ rejects an other source opinions, he must give reasons "germane" to the lay witness for doing so. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  The Regulations provide that the opinion of an acceptable medical source is given more weight than that of an "other source."  20 C.F.R. § 416.927; *Gomez v. Chater,* 74 F.3d 967, 970-71. (9th Cir. 1996).

Here, the ALJ considered Mr. O'Shea's mental RFC assessment, found it unpersuasive and gave it limited weight.  (Tr. 26.)  He noted the marked functional limitations opined were on a check box form report, were not consistent with the Mr. O'Shea's treatment

1  notes which dealt with housing and personal relationship issues, and
2  were unsupported by other medical evidence in the record.  (Tr. 26.)
3  These are specific reasons, "germane" to Mr. O'Shea.[6]  *See, e.g.,*
4  *Crane v. Shalala*, 76 F.3d 251, 253, (9th Cir. 1996).

5      Citing *SSR* 06-03p, Plaintiff argues because Mr. Shea was her
6  mental health treatment provider, his opinions should be given more
7  weight that those of Dr. Bostwick, a non-examining medical source.
8  Although, under the Regulations, other sources cannot establish a
9  medically determinable impairment, the Commissioner has ruled that
10 weight given to their opinions must be evaluated on the basis of
11 certain  factors,  *e.g.,*  their  professional  qualifications,  how
12 consistent their opinions are with the other evidence, the amount of
13 evidence provided in support of their opinions, whether the other
14 source opinion is well explained, and whether the other source "has
15 a  specialty  or  area  of  expertise  related  to  the  individual's
16 impairment." *SSR* 06-03p.  An adjudicator may consider these factors
17 in giving the non-medical treatment provider's opinion more weight
18 than that of an acceptable medical source.  *Id.*   Here, however, the

19 _____

20      [6] Plaintiff  objects  to  the  ALJ's  finding  that  Mr.  O'Shea's
21 relationship with her may have rendered his opinions biased.  (Ct.
22 Rec. 14 at 16; Tr. 26.)  Even if, as argued by Plaintiff, the ALJ's
23 reasoning that the counselor-client relationship might influence Mr.
24 Shea's opinions, is not valid to reject a lay opinion; the other
25 reasons articulated in the decision support the ALJ's rejection.
26 *See, e.g., Carmickle v. Comm of Soc Sec,* 533 F.3d 1155, 1164 (2008);
27 *see, also, Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005);
28 *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

record does not reveal information that would merit giving Mr. O'Shea's opinions the weight of a medical source opinion. Mr. Shea's treatment notes show that he had a four-month treatment relationship with Plaintiff, during which he saw her once a week on an individual basis, and once a week as facilitator during group therapy. (Tr. 423-54, 553.) His treatment notes are brief and include minimal observations regarding Plaintiff's symptoms. Further, there is no explanation for marked limitations assessed, and the other medical evidence in the record does not support the functional limitations indicated in Mr. O'Shea's conclusory, unexplained form report. Because the factors identified in *SSR* 06-03p do not apply to Mr. O'Shea's assessment, and there is no justification for giving his "other source" opinion more weight than the opinions of acceptable medical sources, the ALJ's reasoning is legally sufficient. *SSR* 06-03p.

**C.   Hypothetical Question at Step Four**

At step four, a claimant must prove she can no longer do her past relevant work. Past relevant work is work performed in the last 15 years, lasted long enough to learn it and was substantial gainful employment. The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner. 20 C.F.R. § 416.946; *SSR* 96-5p (RFC assessment is an administrative finding of fact reserved to the Commissioner). No special significance is given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. § 416.927(e). Further, the ALJ is not obliged to accept the limitations propounded by a claimant's representative. *See Osenbrock v. Apfel,* 240 F.3d 1157,

1164 (9th Cir. 2001).

As discussed above, the ALJ properly evaluated the medical evidence and gave legally sufficient reasons for the limited weight given Dr. Rosekrans' opinions and Mr. O'Shea's functioning assessment. The hypothetical given to the VE by the ALJ included a restriction that limited Plaintiff's contact with the general public, and decreased concentration in situations where Plaintiff had to deal with unusual work stressors. (Tr. 556.) These limitations are supported by the medical evidence and Plaintiff's credible testimony, and are incorporated into the final RFC. (Tr. 24.)

The VE testified that the Plaintiff could perform her past work as an accounting clerk, as she performed it, and as generally performed, and indicated this job "would be the one that would require minimal interaction with others." (Tr. 556.) Because the limitations propounded by the ALJ include all those supported by substantial evidence and Plaintiff's credible testimony, the ALJ properly relied on the VE testimony in his determination. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988). Where, as here, ALJ's hypothetical and final RFC determination, were a rational interpretation of the evidence in its entirety, and free of legal error, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097.

### CONCLUSION

The Commissioner's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1       1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is

2   **DENIED.**

3       2.   Defendant's Motion for Summary Judgment dismissal **(Ct.**

4   **Rec. 21)** is **GRANTED.**

5       The District Court Executive is directed to file this Order and

6   provide a copy to counsel for Plaintiff and Defendant.  The file

7   shall be **CLOSED** and judgment entered for **Defendant.**

8       DATED October 13, 2009.

9

10                     __S/ CYNTHIA IMBROGNO__

                 UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21